## UNITED STATES v. CERTAIN PARCELS OF LAND IN FAIRFAX COUNTY, VIRGINIA et al. (DAVIS, Intervenor et al.).

### Misc. No. 555.

United States District Court
E. D. Virginia, Alexandria Division.

Nov. 4, 1948.

See also 89 F.Supp. 567.

George R. Humrickhouse, United States Atty., and A. Carter Whitehead, Special Asst. to the United States Atty., Richmond, Va., and D. Murnan Smith, Department of Justice, Washington, D. C., for the Government.

J. Randall Caton, Jr., Alexandria, Va., for the Belle Haven Realty Corporation.

Andrew W. Clarke, Alexandria, Va., Joseph W. Wyatt, and Frederick A. Ballard, Washington, D. C., J. Barton Phillips, Alexandria, Va., for intervenors.

Harry E. Cunningham, Alexandria, Va., appearing pro se.

BARKSDALE, District Judge.

Since hearing argument on the motions for intervention filed by certain property owners in the Belle Haven Subdivision, I have given the questions presented considerable thought and study. It is my conclusion that the individuals who purchased lots from the Belle Haven Corporation in its subdivision acquired easements in and to the sewer system, although no specific mention of any such easement was mentioned in either the deeds of conveyance or the contract of purchase.

In my opinion, these easements might properly be termed "easements by implication" or "by implied grant", although possibly they might come within the category of "easements by estoppel" or "easements of necessity".

In discussing "easements by implied grant", Mr. Minor states (1 Minor on Real Property 124) that the foundation principle upon which rests the creation of easements by implied grant, is that a grant of

land carries with it by implication as incident thereto everything reasonably necessary to the enjoyment of the thing granted which it is in the power of the grantor to bestow. On this subject, Mr. Minor continues as follows:

"Sec. 104. Same—B. *Quasi Easements Converted into Easements.*

"We have seen that while no one can have a real easement in *his own land,* he may be accustomed to utilize part of his land for the benefit of another part, thereby creating a relation between the two parts, which may be termed a *quasi* easement, which, however, constitutes no real interest separate and apart from his *general ownership* of both tracts, and his consequent right to use either as he sees fit.

"But upon the same principle adverted to as the foundation of easements by *implied grant* generally, namely, that where one grants land he is presumed to pass all in his power to confer that is *reasonably necessary* to the enjoyment of the land granted, if the owner of the two tracts should convey the *quasi dominant* tenement, retaining the *quasi servient* tract, the grant of the former carries with it by *implication* the right to the continued use of the servient tract, as it had been previously used. But this is subject to the qualification, at least where the *servient* estate subsequently or simultaneously comes into possession of some one *other than the original owner,* that the *quasi* easement is (1) apparent, (2) continuous, and (3) *reasonably necessary* to the enjoyment of the dominant tract.

"Thus, in Sanderlin v. Baxter [76 Va. 299, 44 Am.Rep. 165] two estates, 'Woodlawn' and 'Fairfield', separated only by a public road, were both owned by W., who drained Woodlawn by ditches through Fairfield to the river. In 1811, W. granted Woodlawn to A. (under whom the plaintiff claimed) and in 1820 he devized Fairfield to D. (under whom the defendant claimed). The deed and will were both silent about the drainage; but at the time Woodlawn was conveyed these draining ditches were *open* and *visible,* operating regularly and *continuously,* and were then, as they continued to be, *necessary* for the *convenient* and *beneficial* use and enjoyment of Woodlawn, for which purpose they were continuously used down to 1878, when they were *obstructed* by Sanderlin, the then owner of Fairfield. Thereupon, Baxter the owner of Woodlawn, enjoined Sanderlin from obstructing the ditches, and the injunction was made perpetual.

"On the other hand, in Scott v. Beutel [23 Grat. 1, 64 Va. 1], a like relief was denied because the easement claimed was not *obvious and apparent,* nor known to the purchaser to exist at the time of the purchase.

"In Paine v. Chandler [134 N.Y. 385, 32 N.E. 18, 19 L.R.A. 99], pipes for the *supply of water* were laid through one tract to another, both tracts at the time belonging to the same owner, but the ownership later became separated; and it was held that the easement, being apparent, continuous and necessary, passed with the transfer of the dominant tract."

It also seems to me that Section 5168 of the present Code of Virginia, which was Section 2443 of the Code of 1887, has some significance. This section is as follows: *"Appurtenances, etc., included in deed of land.*—Every deed conveying land shall, unless an exception be made therein, be construed to include all buildings, privileges, and appurtenances of every kind belonging to the lands therein embraced."

I have also considered the rather full discussion of "Creation of Easements by Implication" in *Restatement of the Law—Property—Division V—Servitudes,* beginning at page 475, and it seems to me that the principles there enunciated support the conclusion which I have reached here.

The case of Oney v. West Buena Vista Land Company, 104 Va. 580, 52 S.E. 343, 2 L.R.A.,N.S., 832, 113 Am.St.Rep. 1066, seems to me to be quite analogous to the situation presented here. In that case, the facts were that during the boom period of the 90's, defendant land company subdivided a tract of land west of Buena Vista, showing on its plat a bridge to be constructed across the river connecting the prospective development with the Town of Buena Vista. This plat was recorded and the

bridge was actually built. While the bridge was being built, plaintiff bought land in the development at a price about twice as much as the property was worth in the absence of a bridge. Although the deed to the plaintiff referred to the plat and the plat showed the bridge, no reference to the bridge was made in the deed to the plaintiff, and of course no easement was specifically granted him. However, the court held that "the law implies a grant of the bridge as an easement to the property conveyed."

In the light of the above and other authorities, I am of the opinion that the Belle Haven property owners acquired easements in the sewer system as it existed at the time of their purchases. Inasmuch as the Government's taking has deprived them of their easements, I am of the opinion that they are entitled to intervene and assert their claims for just compensation. I am not at this time passing on any questions of how just compensation should be arrived at, or whether or not intervenors have any rights to impose any limitation on the Government's taking in lieu of just compensation.